Honorable Richard A. Jones

1

2

3

4

5

6

7

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8   AZRA RAHIM,

9                         Plaintiff,

10   vs.

11   PROVIDENCE HEALTH AND SERVICES,

12                         Defendant.

13

14

15

16

17

18

NO.   2:13-cv-01499-RAJ

[PROPOSED] BRIEF OF *AMICI CURIAE* WORLD VISION, SEATTLE'S UNION GOSPEL MISSION, RESCUE MISSION OF PIERCE COUNTY, BELLEVUE CHRISTIAN SCHOOL, EVERGREEN CHRISTIAN COMMUNITY, NORTHSHORE CHRISTIAN CHURCH AND ACADEMY, WASHINGTON FEDERATION OF INDEPENDENT SCHOOLS, PACIFIC NORTHWEST PRESBYTERY OF THE PRESBYTERIAN CHURCH IN AMERICA, FAITH PRESBYTERIAN CHURCH, AND NORTHWEST MINISTRY NETWORK IN SUPPORT OF DEFENDANT PROVIDENCE HEALTH AND SERVICES

19

20

21

22

23

[PROPOSED] *AMICUS BRIEF* OF
RELIGIOUS NON-PROFIT
ORGANIZATIONS

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law

Market Place Tower
2025 First Avenue, Penthouse A
Seattle, WA 98121-3125
206•682•0565  Fax: 206•625•1052

## **TABLE OF CONTENTS**

INTERESTS OF *AMICI CURIAE*........................................................................................ 1

INTRODUCTION ............................................................................................................... 5

ARGUMENT ....................................................................................................................... 6

    I.    The Government May Accommodate Religion Without Violating the Establishment Clause......................................................................................... 6

    II.    The Exemption Satisfies The Three-Part Test From *Lemon v. Kurtzman*. ............. 9

        A. The Exemption Has A Secular Purpose. ........................................................ 9

        1. The Exemption Furthers Religious Autonomy, Which is Protected by the Free Exercise Clause and is a Permissible Government Purpose. ................ 9

        2. The WLAD Exemption For Small Businesses Has a Similar, Non-Religious Purpose................................................................................................ 13

        B. The Exemption Does Not Have the Primary Effect of Advancing Religion. . 14

        C. The Exemption Serves to Avoid, Not Promote, Excessive Entanglement. .... 17

    III.    The Exemption Does Not Violate The Equal Protection Clause Of The Fourteenth Amendment. ........................................................................................... 18

CONCLUSION ................................................................................................................. 18

CERTIFICATE OF SERVICE.......................................................................................... 20

[PROPOSED] BRIEF OF *AMICI CURIAE*
RELIGIOUS NON-PROFIT
ORGANIZATIONS  - i

ELLIS, LI & McKINSTRY PLLC
Attorneys at Law

Market Place Tower
2025 First Avenue, Penthouse A
Seattle, WA  98121-3125
206•682•0565  Fax: 206•625•1052

# TABLE OF AUTHORITIES

## Cases

*Board of Education of Westside Community Schools v. Mergens,*
  496 U.S. 226 (1990) ................................................................... 7

*Board of Education of Central School District No. 1 v. Allen,*
  392 U.S. 236 (1968) ................................................................. 14

*Bowen v. Kendrick,*
  87 U.S. 589 (1988) ..................................................................... 7

*City of Boerne v. Flores,*
  521 U.S. 507 (1997) ................................................................... 7

*Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos,*
  483 U.S. 327 (1987) ........................................................... passim

*Cutter v. Wilkinson,*
  544 U.S. 709 (2005) ................................................................... 7

*Employment Division, Department of Human Resources of Oregon v. Smith,*
  494 U.S. 872 (1990) ................................................................... 7

*Hobbie v. Unemployment Appeals Commission of Florida,*
  80 U.S. 136 (1987) ..................................................................... 7

*Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC,*
  132 S. Ct. 694 (2012) ............................................................... 10

*Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in North America,*
  344 U.S. 94 (1952) ................................................................... 10

*Lemon v. Kurtzman,*
  03 U.S. 602  (1971) ..................................................... 9, 10, 12, 14

*McGowan v. Maryland,*
  66 U.S. 420 (1961) ..................................................................... 7

*NLRB v. Catholic Bishop of Chicago,*
  440 U.S. 490 (1979) ............................................................. 11, 12

*Roemer v. Board of Public Works,*
  26 U.S. 761 (1976) ..................................................................... 7

[PROPOSED] BRIEF OF *AMICI CURIAE*
RELIGIOUS NON-PROFIT
ORGANIZATIONS  - ii

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law

Market Place Tower
2025 First Avenue, Penthouse A
Seattle, WA 98121-3125
206•682•0565  Fax: 206•625•1052

*Speiser v. Randall,*
   57 U.S. 513 (1958) ................................................................................. 11

*Walz v. Tax Commission of the City of New York,*
   397 U.S. 664 (1970) ............................................................................ 7, 14

*Widmar v. Vincent,*
   54 U.S. 263 (1981) ................................................................................... 7

*Wisconsin v. Yoder,*
   406 U.S. 205 (1972) ................................................................................. 7

*Wooley v. Maynard,*
   430 U.S. 705 (1977) ................................................................................. 7

*Zorach v. Clauson,*
   343 U.S. 306 (1952) .............................................................................. 8, 9


**Statutes**

42 U.S.C. § 2000e(b) ........................................................................... 13, 16

42 U.S.C. § 2000e-2 .................................................................................. 12

RCW 49.60.030 .......................................................................................... 12

RCW 49.60.040(11) ............................................................................ 6, 13, 16

RCW 49.60.180 .......................................................................................... 12

U.S.C. § 2000e-1(a) ...................................................................................... 8


**Other Authorities**

Joyce E. Taber, *An Unanswered Question About Mandatory Arbitration: Should a
   Mandatory Arbitration Clause Preclude the EEOC from Seeking Monetary
   Relief on an Employee's Behalf in a Title VII Case?*, 50 Am. U. L. Rev. 281
   (2000) ................................................................................................... 15

Lauren LeGrand, *Proving Retaliation after Burlington v. White*, 52 St. Louis U. L.J.
   1221 (2008) .......................................................................................... 15

[PROPOSED] BRIEF OF *AMICI CURIAE*
RELIGIOUS NON-PROFIT
ORGANIZATIONS  - iii

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law

Market Place Tower
2025 First Avenue, Penthouse A
Seattle, WA 98121-3125
206•682•0565  Fax: 206•625•1052

R. James Filiault, *Enforcing Mandatory Arbitration Clauses in Employment Contracts: A Common Sense Approach to the Federal, Arbitration Act's Section I Exclusion*, 36 Santa Clara L. Rev. 559 (1996) ................................................................ 15

Seattle's Union Gospel Mission, *Financial Accountability*, http://www.ugm.org/site/DocServer/ 2013_Annual_Report_ single.pdf?docID=2981 (last visited July 11, 2014)....................................................................................................................... 16

Stephanie Ewert, United States Census Bureau, *The Decline In Private School Enrollment*,  http://www.census.gov/hhes/school/files/ewert_private_school_enrollment.pdf at 21 (last visited July 11, 2014)....................... 17

The Rescue Mission, *Annual Report 2013*, http://www.rescue-mission.org/document.doc?id=256 (last visited July 11, 2014).................................... 16

United States Census Bureau, *Statistics of US Businesses*, http://www.census.gov/econ/susb/ (follow "U.S. & states, totals" hyperlink) (last visited July 11, 2014)......... 13

Washington Office of the Superintendent of Public Instruction, *Approved Private Schools 2013-2014*, http://www.k12.wa.us/PrivateEd/PrivateSchools/pubdocs/ApprovedPrivateSchoolsDirectory.pdf (last visited July 11, 2014) ............... 17

Washington Office of the Superintendent of Public Instruction, *Education Quick Facts*, http://data.k12.wa.us/PublicDWP/Web/WashingtonWeb/Home.aspx (last visited July 11, 2014) ................................................................................................ 17

Washington State Catholic Conference, *Directory of Social Services and Housing Facilities of the Catholic Charities Network 2012*, http://www.thewscc.org/images/stories/Resources/Directory/12ccdir.pdf (last visited July 11, 2014) ............... 16

[PROPOSED] BRIEF OF *AMICI CURIAE* RELIGIOUS NON-PROFIT ORGANIZATIONS  - iv

ELLIS, LI & McKINSTRY PLLC
Attorneys at Law

Market Place Tower
2025 First Avenue, Penthouse A
Seattle, WA 98121-3125
206•682•0565  Fax: 206•625•1052

## INTERESTS OF *AMICI CURIAE*

The *amici* are a broad range of faith-based, non-profit organizations located in Washington State that relieve the state of its burden of providing social services and education to tens of thousands of Washingtonians across the state. *Amici* have a direct interest in preserving the religious non-profit exemption to shield them from the potential interference such claims would have on their religious missions and from the high costs of defending against discrimination claims.

### A.  World Vision

World Vision Inc. is a non-profit, Christian humanitarian organization that raises funds to provide services for the poor and victims of injustice in nearly 100 countries through World Vision International, an affiliated organization. The U.S. office of World Vision also assists the poor in major U.S. cities and Appalachia.

World Vision is dedicated to working with children, families, and their communities world-wide to reach their full potential by tackling the causes of poverty and injustice. For 60 years, World Vision has been joining with local people to help find lasting ways to improve the lives of impoverished children and families. Motivated by their faith in Jesus Christ, World Vision's employees serve alongside the poor and oppressed as a demonstration of God's unconditional love for all people. World Vision serves all people, regardless of religion, race ethnicity, or gender.

### B.  Seattle's Union Gospel Mission

Seattle's Union Gospel Mission provides transformational care to homeless and hurting men, women and children from across the Puget Sound area. Its purpose is to restore hope in individuals that leads to self-sufficiency, caring, and productive citizenship.

[PROPOSED] BRIEF OF *AMICI CURIAE* RELIGIOUS NON-PROFIT ORGANIZATIONS - 1

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law

Market Place Tower
2025 First Avenue, Penthouse A
Seattle, WA  98121-3125
206•682•0565  Fax: 206•625•1052

1    Services provided by the Mission include emergency food and shelter, short and long-

2  term residential recovery programs for individuals seeking to dramatically transform their lives,

3  and outreach programs to targeted constituent groups. The Mission operates nine different

4  facilities, providing living accommodations for up to 250 individuals in various stages of

5  recovery. In treating the whole person, it also provides daily needs, individualized care,

6  counseling and training, educational and career opportunities, housing assistance and a variety

7  of support services including free legal and dental services, clothing and household goods. In

8  2012, the Mission served nearly 780,000 meals, provided nearly 180,000 safe overnight stays,

9  and conducted more than 25,000 counseling sessions.

10    **C.  The Rescue Mission of Pierce County**

11    The Rescue Mission of Pierce County provides safe and secure emergency shelter and

12  hot, nutritious meals for homeless men, women, and children. To address the issues that cause

13  homelessness, the Rescue Mission is faith-based and provides life transformation programs

14  including case management, free residential alcohol/drug rehabilitation for men, women, and

15  families, adult literacy and GED (high school equivalency) test preparation, computer classes,

16  help with resume preparation, job coaching, life skills classes such as budgeting and parenting,

17  career coaching, transitional housing, and a youth program for children of homeless families

18  residing at the Mission. In 2012, the Rescue Mission provided 177,000 beds in its shelters and

19  served 297,000 meals.

20    **D.  Bellevue Christian School**

21    Bellevue Christian School (BCS) is a private, nondenominational Preschool-12th grade

22  Christian school emphasizing strong academics and service within a Christ-centered

23  curriculum. The 1,300 member student body is drawn from a broad geographic area including

[PROPOSED] BRIEF OF *AMICI CURIAE* RELIGIOUS NON-PROFIT ORGANIZATIONS - 2

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law

Market Place Tower
2025 First Avenue, Penthouse A
Seattle, WA  98121-3125
206•682•0565  Fax: 206•625•1052

King County and part of Snohomish County. BCS includes one high school, one junior high school, two elementary school campuses, and three preschools.

Some of the ways BCS serves its local community are through volunteer services, a food bank, the Maltby rescue mission, and ecological services and stream protection. BCS supports international ministries such as an orphanage in Thailand, two sister schools in Uganda, organizations fighting human trafficking, and an educational and community development center in El Salvador. BCS facilities also provide venues for local congregations, weddings, symphony performances, scouting meetings, and community athletic teams.

**E.  Evergreen Christian Community**

Evergreen Christian Community (ECC) is an Olympia-area church committed to serving the needs of the community around it as an expression of the Christian faith. ECC provides community care services that include utility and rent assistance to needy families and individuals, a food bank, and low-cost auto repair with sliding scale fees. ECC assists the state by donating bus passes for DSHS clients, providing assistance for foster children turning 18 years old and exiting the state foster care system, and providing classroom supplies for public schools and backpacks filled with school supplies for students in need. ECC members also provide on-campus after-school activities and homework assistance for students and children in nearby low-income apartments. ECC operates a private Christian school and grants need-based scholarships to students who would otherwise be unable to afford private education.

**F.  Northshore Christian Church and Academy**

Northshore is an independent, nondenominational church in Everett offering a wide variety of programs and services to families and individuals, including a food pantry, financial aid ministry, substance abuse recovery support groups, and donations of clothing and toys,

[PROPOSED] BRIEF OF *AMICI CURIAE* RELIGIOUS NON-PROFIT ORGANIZATIONS - 3

ELLIS, LI & McKINSTRY PLLC
Attorneys at Law

Market Place Tower
2025 First Avenue, Penthouse A
Seattle, WA  98121-3125
206•682•0565  Fax: 206•625•1052

among others. Northshore also partners with more than 20 missionary organizations serving the needs of communities throughout Snohomish County and the world, dedicating a portion of its income to the financial support of these ministries. In addition, Northshore offers education to the community through Northshore Christian Academy, which partners with families to provide a superior Christian education developing spiritual, academic, and personal excellence in a Christ-centered environment.

### G.  Washington Federation of Independent Schools

The Washington Federation of Independent Schools (WFIS) is the umbrella organization for private education in Washington State. The mission of WFIS is to strengthen education as the advocate and voice of private schools. WFIS is the only statewide vehicle for regular communication and strategic development between the many different constituencies, nearly three-quarters of which are religious schools. Members include the Association of Christian Schools International (ACSI), Catholic schools, Christian Schools International (CSI), Hutterian Brethren schools, Islamic schools, Jewish schools, Lutheran schools, Montessori schools (AMI, AMS, PNMA), Pacific Northwest Association of Independent Schools (PNAIS), Seventh-Day Adventist schools, and Waldorf schools (AWSNA). WFIS supports high quality educational practices, advances mission-based learning, offers professional development opportunities including conferences, and provides opportunities for different kinds of schools to meet and explore educational opportunities and topics.

### H.  The Pacific Northwest Presbytery of the Presbyterian Church in America

The Presbytery of the Pacific Northwest is affiliated with the Presbyterian Church in America (PCA) and is the regional body of local Presbyterian congregations in Washington State and other Pacific Northwest states. Many of the Presbytery's local congregations are small

[PROPOSED] BRIEF OF *AMICI CURIAE* RELIGIOUS NON-PROFIT ORGANIZATIONS  - 4

ELLIS, LI & McKINSTRY PLLC
Attorneys at Law

Market Place Tower
2025 First Avenue, Penthouse A
Seattle, WA  98121-3125
206•682•0565  Fax: 206•625•1052

with memberships and regular attendees of 200 or less, about half do not own their own buildings, and most employ between five and ten employees.

### I.   Faith Presbyterian Church

Faith Presbyterian Church is a member congregation of the Pacific Northwest Presbytery and is located in Tacoma, Washington. Faith employs 11 employees, including the faculty in its small private high school of approximately 100 students. It has a vibrant ministry to the poor in the Tacoma area, providing rent assistance, food, and other emergency support to the community, regular financial support to the Rescue Mission and other Tacoma-area ministries addressing substance abuse and addictions, and significant tuition assistance to those who cannot afford to attend its high school. Faith volunteers provide emergency support to between 30 and 50 people per month.

### J.   Northwest Ministry Network

The Northwest Ministry Network is the regional conference of the approximately 331 Assemblies of God churches in Washington and Idaho.  The Network provides training for pastors and churches, and empowers and supports local and international missionaries.  The Network founded Northwest University in 1934, which continues to provide Christian higher education and community oriented values.

## INTRODUCTION

The *amici* represent a broad range of religious organizations that provide substantial benefits to Washington's local communities.  The *amici* provide humanitarian and crisis relief, as well as critical social and educational services to Washington State residents, thereby relieving the state of substantial financial obligations. The *amici* include non-profit organizations such as World Vision, Seattle's Union Gospel Mission, and the Rescue Mission

[PROPOSED] BRIEF OF *AMICI CURIAE* RELIGIOUS NON-PROFIT ORGANIZATIONS - 5

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law

Market Place Tower
2025 First Avenue, Penthouse A
Seattle, WA  98121-3125
206•682•0565  Fax: 206•625•1052

of Pierce County. Also included are religiously-affiliated educational institutions that provide important in-state educational opportunities for Washington residents, such as Northwest University, Bellevue Christian School, Evergreen Christian Community, Northshore Christian Church and Academy, and the Washington Federation of Independent Schools. Equally important, among the *amici* are smaller religious organizations whose charitable ministries would be most impacted by a narrowing of the WLAD exemption, such as the Pacific Northwest Presbytery of the Presbyterian Church in America and Faith Presbyterian Church. Regardless of size, all the *amici* regard the exemption as an important shield from the threat of discrimination litigation to their religious freedom and from the potentially ruinous costs of such litigation so that they can devote their resources to those that they serve.  While none would discriminate on the grounds alleged by Plaintiff Azra Rahim, the exemption for religious non-profits (the "exemption") found in the Washington Law Against Discrimination (WLAD), RCW 49.60.040(11), protects *amici*'s religious freedom interests by shielding them from discrimination claims that could encroach on their religious missions and from burdensome and potentially destructive litigation. The exemption serves important—and wholly lawful—state interests.  It enables the private provision of social and relief services and thereby reducing the state's financial burden to provide such services.  It also preserves the autonomy of religious organizations, which is protected by—not prohibited by—the First Amendment.  *Amici* urge the Court to uphold the statutory exemption.

## ARGUMENT

**I.     The Government May Accommodate Religion Without Violating the Establishment Clause.**

ELLIS, LI & McKINSTRY PLLC
Attorneys at Law

Market Place Tower
2025 First Avenue, Penthouse A
Seattle, WA  98121-3125
206•682•0565  Fax: 206•625•1052

1    In evaluating conflicts under the Religion Clauses of the First Amendment, the Supreme

2    Court has routinely acknowledged that accommodation of the religious beliefs of the American

3    people is permitted, and sometimes necessary, to achieve both the broad purposes of the

4    Religion Clauses of the First Amendment and the public welfare objectives of the modern

5    administrative state. *See, e.g., McGowan v. Maryland,* 366 U.S. 420 (1961); *Wisconsin v.*

6    *Yoder,* 406 U.S. 205 (1972); *Wooley v. Maynard,* 430 U.S. 705 (1977); *Roemer v. Bd. of Pub.*

7    *Works,* 426 U.S. 761 (1976); *Corp. of the Presiding Bishop of the Church of Jesus Christ of*

8    *Latter-Day Saints v. Amos,* 483 U.S. 327 (1987); *Bowen v. Kendrick,* 487 U.S. 589 (1988);

9    *Cutter v. Wilkinson*, 544 U.S. 709 (2005).

10    Even if the Free Exercise Clause may not arguably *require* society to accommodate

11    religious practice under "neutral laws of general applicability," *Employment Division,*

12    *Department of Human Resources of Oregon v. Smith,* 494 U.S. 872 (1990), the Supreme Court

13    has nevertheless recognized that "a society that believes in the negative protection afforded [by

14    the First Amendment] to religious belief can be expected to be solicitous of that value in its

15    legislation as well." *Id.* at 890. Legislative accommodation of rights of conscience is consistent

16    with earlier pronouncements of the Court that "government may (and sometimes must)

17    accommodate religious practices and…it may do so without violating the Establishment

18    Clause." *Hobbie v. Unemployment Appeals Comm'n of Fla.,* 480 U.S. 136, 144-45 (1987); *Bd.*

19    *of Ed. of Westside Cmty. Schs. v. Mergens,* 496 U.S. 226 (1990); *Widmar v. Vincent,* 454 U.S.

20    263 (1981); *City of Boerne v. Flores,* 521 U.S. 507 (1997); *Bowen,* 487 U.S. at 605-618.

21    "There is ample room under the Establishment Clause for 'benevolent neutrality which will

22    permit religious exercise to exist without sponsorship and without interference.'" *Amos*, 483

23    U.S. at 334 (quoting *Walz v. Tax Comm'n of the City of N.Y.*, 397 U.S. 664, 669 (1970)).  When

[PROPOSED] BRIEF OF *AMICI*
*CURIAE* RELIGIOUS NON-PROFIT
ORGANIZATIONS - 7

ELLIS, LI & McKINSTRY PLLC
Attorneys at Law

Market Place Tower
2025 First Avenue, Penthouse A
Seattle, WA 98121-3125
206•682•0565  Fax: 206•625•1052

government chooses to *accommodate* religious practice, it "follows the best of our traditions" and "respects the religious nature of our people… [T]o hold that [government] may not [do so] would be to find in the Constitution a requirement that the government show a callous indifference to religious groups. That would be preferring those who believe in no religion over those who do believe." *Zorach v. Clauson,* 343 U.S. 306, 314 (1952).

The Court has also upheld statutory religious accommodations for employers, even when the accommodation limits employees' statutory rights.  In *Amos*, the Court rejected an as-applied Establishment Clause challenge to Section 702 of Title VII, 42 U.S.C. § 2000e-1(a), which exempts "the secular nonprofit activities of religious organizations" from Title VII's anti-discrimination rules.  483 U.S. at 329-30.  The plaintiff in *Amos* was an employee of a non-profit gymnasium owned by the Church of Jesus Christ of Latter-day Saints for sixteen years, but he was terminated for not being in good standing with the Church.  The lower court had found that as applied to an employee with no religious duties or function, the exemption violated the Establishment Clause because its primary effect was to advance religion.

The Supreme Court, with reasoning highly applicable to the present case, overruled the lower court's determination that the exemption was unconstitutional.  Even though the exemption was purely for religious organizations, the Court rejected the argument that statutes giving special consideration to religious groups are *per se* invalid:  "That would run contrary to the teaching of our cases that there is ample room for accommodation of religion under the Establishment Clause. Where, as here, government acts with the proper purpose of lifting a regulation that burdens the exercise of religion, we see no reason to require that the exemption comes packaged with benefits to secular entities." *Id.* at 338 (internal citation omitted).  The Court also rejected the argument that giving a broader exemption than required by the Free

[PROPOSED] BRIEF OF *AMICI CURIAE* RELIGIOUS NON-PROFIT ORGANIZATIONS - 8

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law

Market Place Tower
2025 First Avenue, Penthouse A
Seattle, WA  98121-3125
206•682•0565  Fax: 206•625•1052

1   Exercise Clause necessarily violated the Establishment Clause, affirming the principle that

2   there is room between the two clauses for the benevolent accommodation of religious belief.

3   *Id.* at 335-36.

4   **II.     The Exemption Satisfies The Three-Part Test From *Lemon v. Kurtzman*.**

5          *Amos* examined the exemption under the three-pronged test from *Lemon v. Kurtzman*,

6   403 U.S. 602, 612-13 (1971), which holds that in order to comply with the Establishment

7   Clause of the First Amendment, a statute must 1) have a secular purpose, 2) its primary effect

8   may not be to either advance nor inhibit religion, and 3) must not foster excessive entanglement

9   with religion.  The *Amos* Court found that the exemption violated none of these requirements.

10  Similarly, the WLAD exemption at issue in this case also passes the *Lemon* test and complies

11  with the Establishment Clause.

12         **A.  The Exemption Has A Secular Purpose.**

13         *Lemon* requires first that the law at issue serve a "secular legislative purpose." *Id.* at

14  612.  This requirement "does not mean that the law's purpose must be unrelated to religion—

15  that would amount to a requirement 'that the government show a callous indifference to

16  religious groups,' *Zorach,* 343 U.S. at 314, and the Establishment Clause has never been so

17  interpreted."  *Amos*, 483 U.S. at 335.  Rather, the "secular purpose" requirement "aims at

18  preventing  the  relevant  governmental  decisionmaker—in  this  case,  Congress—from

19  abandoning neutrality and acting with the intent of promoting a particular point of view in

20  religious matters."  *Id.*

21         **1.     The Exemption Furthers Religious Autonomy, Which is Protected by the
                Free Exercise Clause and is a Permissible Government Purpose.**

22

23

[PROPOSED] BRIEF OF *AMICI
CURIAE* RELIGIOUS NON-PROFIT
ORGANIZATIONS - 9

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law

Market Place Tower
2025 First Avenue, Penthouse A
Seattle, WA  98121-3125
206•682•0565  Fax: 206•625•1052

1   The Supreme Court has "long recognized that the Religion Clauses protect a private

2   sphere within which religious bodies are free to govern themselves in accordance with their

3   own beliefs." *Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC*, 132 S. Ct.

4   694, 712 (2012) (Alito, J., concurring). The Constitution guarantees religious organizations

5   "independence from secular control or manipulation—in short, power to decide for themselves,

6   free from state interference, matters of church government as well as those of faith and

7   doctrine." *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.,* 344 U.S.

8   94, 116 (1952).

9       Protecting religious autonomy, a concept safeguarded by both Religion Clauses, is a

10  permissible legislative purpose.   As the Supreme Court stated in *Amos*, "[u]nder

11  the *Lemon* analysis, it is a permissible legislative purpose to alleviate significant governmental

12  interference with the ability of religious organizations to define and carry out their religious

13  missions."  483 U.S. at 335.  The argument that there is no permissible secular purpose in

14  exempting all religious non-profits because compliance with WLAD would not implicate the

15  free exercise rights of those organizations is meritless.  Complying with WLAD would still

16  represent a substantial burden on religious autonomy, one that may be lifted by the state

17  legislature without running afoul of the Establishment Clause.

18      First, simply subjecting religious non-profits to WLAD compliance will inhibit their

19  religious exercise by producing a chilling effect on the way they further their religious mission,

20  fearing potential liability for employment discrimination.

21          Nonetheless, it is a significant burden on a religious organization to require it,
            on pain of substantial liability, to predict which of its activities a secular court

22          will consider religious. The line is hardly a bright one, and an organization
            might understandably be concerned that a judge would not understand its

23

[PROPOSED] BRIEF OF *AMICI
CURIAE* RELIGIOUS NON-PROFIT
ORGANIZATIONS - 10

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law

Market Place Tower
2025 First Avenue, Penthouse A
Seattle, WA  98121-3125
206•682•0565  Fax: 206•625•1052

religious tenets and sense of mission.  Fear of potential liability might affect the
way an organization carried out what it understood to be its religious mission."

*Id.* at 336; *see also NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 496 (1979) (subjecting religious schools to NLRB jurisdiction would produce "chilling" effect on the furtherance of the religious mission of the school).  In order to avoid potential lawsuits, religious organizations will ultimately "steer far wider of the unlawful zone" of impermissible conduct in making decisions related to employment, *Speiser v. Randall*, 357 U.S. 513, 526 (1958), impacting the way they pursue their religious missions.

Even though many religious organizations, like *amici*, would not discriminate on the grounds alleged by the Plaintiff, the lines between making employment decisions based on religious belief for religious "ministers" and in furtherance of a religious mission, which religious organizations are entitled to do under the First Amendment, and impermissible discrimination based on protected categories like race, sex, and national origin, are far from clear-cut.  As the Supreme Court has pointed out previously, the "secular" activities and the "religious" ones are not so easily separated in the context of a religious organization, whose activities can always be traced back to its religious purpose.  *Catholic Bishop*, 440 U.S. at 501-02.

Even if the employees terminated are laypeople, non-adherents, or involved in "secular" activities, the religious autonomy of the organization is still implicated if one of these employees files suit claiming discrimination.  Determining whether an employee's termination was based on the impermissible ground of sex discrimination, or based on the employer's religious beliefs about the sexes, as one example, would necessarily result in an "intrusive inquiry into religious belief" in order to determine whether the organization has a particular

[PROPOSED] BRIEF OF *AMICI CURIAE* RELIGIOUS NON-PROFIT ORGANIZATIONS - 11

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law

Market Place Tower
2025 First Avenue, Penthouse A
Seattle, WA  98121-3125
206•682•0565  Fax: 206•625•1052

religious belief that sufficiently explains the employee's treatment. *Amos*, 483 U.S. at 339. "This kind of state inspection and evaluation of the religious content of a religious organization is fraught with the sort of entanglement that the Constitution forbids." *Lemon*, 403 U.S. at 620. Preserving religious autonomy by avoiding entanglement is a permissible government purpose.

Further, the broad scope of WLAD justifies the similarly broad reach of the exemption for religious non-profits. In addition to the classes covered by Title VII, such as race, color, religion, and sex (42 U.S.C. § 2000e-2), WLAD extends employment discrimination protection to areas such as age, sexual orientation, gender identity, and marital and veteran status. RCW 49.60.030, RCW 49.60.180. That broader reach makes it completely legitimate for the state to provide a broader exemption under WLAD than Title VII. The Legislature, by enacting a broad exemption to WLAD, made a policy choice to avoid the potential pitfalls of secular bureaucrats and courts trying to reconcile Washington's ever-growing list of protected categories—many with an arguably religious aspect—with a myriad of religious belief systems.

Subjecting religious non-profit organizations to potential liability under WLAD burdens religious exercise by raising the possibility of intrusive examinations of religious doctrine, which can cause excessive entanglement, which is prohibited under *Lemon*, can inhibit religious exercise by creating a chilling effect, also prohibited under *Lemon*, and burdens religious organizations, many of which operate on shoestring budgets, with the possibility of having to defend themselves in court against discrimination claims. Defense against even a meritless claim is not without significant costs.  Choosing to spare religious organizations from these burdens is an entirely legitimate secular interest.  Far from violating the Constitution, this kind of exemption is made in furtherance of the concept of religious autonomy, which both the Free Exercise Clause and Establishment Clauses protect.

[PROPOSED] BRIEF OF *AMICI CURIAE* RELIGIOUS NON-PROFIT ORGANIZATIONS - 12

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law

Market Place Tower
2025 First Avenue, Penthouse A
Seattle, WA 98121-3125
206•682•0565 Fax: 206•625•1052

1

2

**2.      The WLAD Exemption For Small Businesses Has a Similar, Non-Religious Purpose.**

3

4

WLAD does not exempt religious non-profit organizations alone—small businesses

5 also receive an exemption, further illustrating the secular purpose behind the exemption.  A

6 similar purpose underlies the small business exemptions to WLAD and Title VII: providing

7 relief from those statutes for organizations that provide a valuable social benefit but are the

8 least likely to be able to bear the costs of compliance. WLAD exempts all employers with

9 seven or fewer employees. RCW 49.60.040(11). Title VII exempts all employers with fourteen

or fewer employees. 42 U.S.C. § 2000e(b).

10          The exemptions from WLAD and Title VII for businesses based on the number of

11 employees reflect legislative judgments that the employment opportunities provided by smaller

12 businesses outweigh the benefits of imposing compliance on these employers. The majority

13 of businesses—in both Washington State and the nation—are exempted by these provisions. As

14 of 2011, the latest year employment figures are available from the U.S. Census Bureau, at least

15 61 percent of Washington employers are completely exempted from the WLAD[1] and at least 79

16 percent of employers nationwide are completely exempted from Title VII. The rationale of the

17 exemption for religious non-profits without regard to their size is similar to the rationale behind

18 the exemption of smaller, for-profit businesses regardless of their revenue. In each case, the

19 organizations provide benefits to society that the legislatures considered important enough to

20

21

_____

[1] 86,952 out of 142,185 employers in Washington had four employees or fewer.  United States Census Bureau, *Statistics of US Businesses*, http://www.census.gov/econ/susb/ (follow "U.S. & states, totals" hyperlink) (last visited July 11, 2014).  4,511,051 out of 5,684,424 employers in the U.S. had nine employees or fewer. *Id.*

22

23

[PROPOSED] BRIEF OF *AMICI CURIAE* RELIGIOUS NON-PROFIT ORGANIZATIONS  - 13

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law

Market Place Tower
2025 First Avenue, Penthouse A
Seattle, WA  98121-3125
206•682•0565  Fax: 206•625•1052

1   refrain from interfering with their hiring practices.  It is clear, then, that WLAD has a secular

2   purpose—both in protecting religious autonomy, and decreasing the burdens on entities

3   providing particular benefits to the public.

**B.  The Exemption Does Not Have the Primary Effect of Advancing Religion.**

5   While the exemption surely protects the religious autonomy of religious non-profit

6   organizations, and consequently their ability to advance their religious missions, that does not

7   mean it has the primary effect of advancing religion.  Religious groups have been better able to

8   advance their purposes on account of many laws that have passed constitutional muster: for

9   example, the property tax exemption at issue in *Walz,* 397 U.S. 664, or the loans of

10  schoolbooks to parochial school students upheld in *Board of Education of Central School*

11  *District No. 1 v. Allen,* 392 U.S. 236 (1968). As the Supreme Court pointed out in *Amos,* a "law

12  is not unconstitutional simply because it *allows* churches to advance religion, which is their

13  very purpose. For a law to have forbidden "effects" under *Lemon,* it must be fair to say that

14  the *government itself* has advanced religion through its own activities and influence."  483 U.S.

15  at 336-37.  Any advancement of religion taking place as a result of the WLAD exemption

16  cannot be attributed to government action.  There is no evidence of any specific religious

17  activity that is now engaged in or religious belief propagated as a direct result of the exemption.

18  Any religious activities or beliefs being furthered are being accomplished by the religious

19  organizations themselves, not the government.

20  Further, the exemption has pronounced secular benefits, meaning that any religious

21  benefit cannot be considered the "primary" effect of the exemption.  One secular effect of the

22  exemption is the practical benefit—not only for the government and the organizations, but to

23  society at large—in allowing religious non-profit organizations, most of which operate entirely

[PROPOSED] BRIEF OF *AMICI CURIAE* RELIGIOUS NON-PROFIT ORGANIZATIONS - 14

ELLIS, LI & McKINSTRY PLLC
Attorneys at Law

Market Place Tower
2025 First Avenue, Penthouse A
Seattle, WA  98121-3125
206•682•0565  Fax: 206•625•1052

1    on charitable donations from co-religionists, to devote their financial resources to the social

2    services they provide. This, in turn, meets critical needs of the most vulnerable and others in

3    the community and lessens the burden on governmental assistance programs. Even for the K-12

4    schools and colleges that do not rely primarily on donations, it is well-known that education

5    costs continue to spiral upward while the incomes of most American students and their families

6    remain flat. Protecting religious educational organizations from costly discrimination litigation

7    is a rational secular basis for exempting such non-profits.

8         No one doubts the substantial costs that accompany compliance with WLAD, not to

9    mention the costs should a jury conclude that an organization violated it.[2] These costs are

10   significant for any employer; they are potentially ruinous for many, if not most, religious non-

11   profits. Even for those that obtain liability insurance, there are significant costs incurred in

12   these situations prior to a claim being filed, and most policies require religious non-profits to

13   expend tens of thousands of dollars before insurance coverage is triggered.

14        Although the expansion of WLAD coverage would affect all *amici*, it would be

15   particularly burdensome on smaller non-profit organizations with a handful of employees.

16   These employers, such as *amici curiae* Faith Presbyterian Church and many of the

17   congregations of the Pacific Northwest Presbytery, as well as likely thousands of other

18   Protestant congregations and a majority of the 246 Catholic parishes in Washington, have more

19   _____

20   [2] *See* Lauren LeGrand, *Proving Retaliation after Burlington v. White*, 52 St. Louis U. L.J. 1221, 1245 (2008) (noting average cost of defending against employment discrimination claim was $250,000 as of 2006); R.

21   James Filiault, *Enforcing Mandatory Arbitration Clauses in Employment Contracts: A Common Sense Approach to the Federal, Arbitration Act's Section I Exclusion*, 36 Santa Clara L. Rev. 559, 589 (1996) (reporting average

22   jury verdict for prevailing plaintiff of $647,000); Joyce E. Taber, *An Unanswered Question About Mandatory Arbitration: Should a Mandatory Arbitration Clause Preclude the EEOC from Seeking Monetary Relief on an Employee's Behalf in a Title VII Case?*, 50 Am. U. L. Rev. 281, 313 (2000) (noting mean damage award in federal

23   civil actions of $530,611).

[PROPOSED] BRIEF OF *AMICI CURIAE* RELIGIOUS NON-PROFIT ORGANIZATIONS - 15

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law

Market Place Tower
2025 First Avenue, Penthouse A
Seattle, WA 98121-3125
206•682•0565 Fax: 206•625•1052

than seven but fewer than fifteen employees. Under the current statutes, they are not subject to the WLAD due to their non-profit religious status (RCW 49.60.040(11)) and are not subject to Title VII because they are below the 15 employee threshold for application of federal law (42 U.S.C. § 2000e(b)). Narrowing the WLAD exemption would expose these organizations to employment practices liability for the first time.  This burden would fall heavily on many other local congregations and other small religious non-profits throughout the state, which are also likely to be within the eight-to-fourteen employee window.

Donations to cover these new expenses would necessarily divert resources from the work of these religious organizations. As charitable operations that rely mostly on donations from co-religionists, the organizations could not price these increased expenses into the cost of the "goods" they provide. For every dollar spent on compliance, defense, and judgment costs, one fewer dollar is available for services.

The state benefits directly from the exemption when its financial burden is reduced by the services *amici* provide.  Seattle's Union Gospel Mission and the Rescue Mission of Pierce County, as well as Catholic Charities agencies, serve tens of thousands of clients and provide hundreds of thousands of shelter-nights and more than two million meals per year to vulnerable residents.[3]  This does not include the services provided by other religious non-profits such as Evergreen Christian Community, Northshore Christian Church, Faith Presbyterian Church, and countless other small congregations that provide food pantries and financial assistance to the

---

[3]*See* Seattle's Union Gospel Mission, *Financial Accountability*, http://www.ugm.org/site/DocServer/2013_Annual_Report_single.pdf?docID=2981 (last visited July 11, 2014); The Rescue Mission, *Annual Report 2013*, http://www.rescue-mission.org/document.doc?id=256 (last visited July 11, 2014); Washington State Catholic Conference, *Directory of Social Services and Housing Facilities of the Catholic Charities Network 2012*, http://www.thewscc.org/images/stories/Resources/Directory/12ccdir.pdf (last visited July 11, 2014).

[PROPOSED] BRIEF OF *AMICI CURIAE* RELIGIOUS NON-PROFIT ORGANIZATIONS - 16

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law

Market Place Tower
2025 First Avenue, Penthouse A
Seattle, WA  98121-3125
206•682•0565  Fax: 206•625•1052

needy in their local communities. Striking down the exemption will inevitably result in some of these resources being redirected towards litigation costs, leaving the state to fill the gap at a time it can least afford to do so or, even worse, resulting in more unmet needs.

The state also benefits from the exemption by reaping savings in education expenses through the work done by non-profit religious schools. There are hundreds of private schools in Washington, the vast majority of which are religiously-affiliated schools.[4] In 2010, these private schools enrolled 112,505 Washington State students who would otherwise be part of the public school system.[5] Based on the $9,739 average expenditure per student in 2013,[6] those students represent a savings of over one billion dollars for the state. The state benefits by not incurring expenses for these students, while simultaneously collecting revenue from their parents through the general taxes that support Washington's schools.

In light of these realities, the current WLAD exemption provides a greater benefit to society than exposing these organizations to increased employment practices liability, making its "primary effect" preservation of religious freedom and the viability of religious providers of social services, despite the fact that the exemption applies on its face to religious organizations.

**C.  The Exemption Serves to Avoid, Not Promote, Excessive Entanglement.**

As in *Amos*, it cannot be "seriously contended" that the exemption results in impermissible entanglement of church and state. 483 U.S. at 339.  In fact, as discussed above, the statute "effectuates a more complete separation of the two and avoids . . . intrusive inquiry

---

[4] Washington Office of the Superintendent of Public Instruction, *Approved Private Schools 2013-2014*, http://www.k12.wa.us/PrivateEd/PrivateSchools/pubdocs/ApprovedPrivateSchoolsDirectory.pdf (last visited July 11, 2014).
[5] Stephanie Ewert, United States Census Bureau, *The Decline In Private School Enrollment*, http://www.census.gov/hhes/school/files/ewert_private_school_enrollment.pdf at 21 (last visited July 11, 2014).
[6] Washington Office of the Superintendent of Public Instruction, *Education Quick Facts*, http://data.k12.wa.us/PublicDWP/Web/WashingtonWeb/Home.aspx (last visited July 11, 2014)

[PROPOSED] BRIEF OF *AMICI CURIAE* RELIGIOUS NON-PROFIT ORGANIZATIONS - 17

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law

Market Place Tower
2025 First Avenue, Penthouse A
Seattle, WA  98121-3125
206•682•0565  Fax: 206•625•1052

1    into religious belief," which results in entanglement.  *Id.*   Thus, the exemption easily passes

2    muster under the third part of the *Lemon* test.

3    **III.     The Exemption Does Not Violate The Equal Protection Clause Of The Fourteenth
              Amendment.**

4

5            To address Plaintiff's claim under the Equal Protection Clause of the Fourteenth

6    Amendment, the Court need not look beyond Plaintiff's Establishment Clause claim.  Plaintiff's

7    abbreviated argument under the Equal Protection Clause must fail as it is entirely based on her

8    erroneous assertion that the WLAD exemption violates the First Amendment's Establishment

9    Clause.  *See Amos,* 483 U.S. at 338-39 (holding that there is "no justification for applying strict

10   scrutiny to a statute that passes the *Lemon* test" and resolving the plaintiff's Equal Protection

11   Claim on the same basis as the Establishment Clause claim).  Because the Legislature—in

12   purpose and effect—protected rather than violated religious freedom in exempting religious

13   non-profits, Plaintiff's Equal Protection claim fails along with her Establishment Clause

14   challenge.

15                                          **CONCLUSION**

16           The fact that the state chose to remove a burden from religious entities vis-à-vis the

17   WLAD exemption does not mean the exemption automatically violates the Constitution.

18   According to Supreme Court precedent, the exemption does not violate the Establishment

19   Clause.  It has a secular purpose: protecting religious autonomy, a concept protected by the

20   Constitution.  And the primary effects of the law are to benefit all of society, because of the

21   increase in social services that religious organizations are able to provide, and to benefit the

22   state, due to the financial savings of not having to provide those services itself.  The exemption

23   not only does not cause the government to become excessively entangled with religion, but it

[PROPOSED] BRIEF OF *AMICI
CURIAE* RELIGIOUS NON-PROFIT
ORGANIZATIONS - 18

ELLIS, LI & MCKINSTRY PLLC
*Attorneys at Law*

Market Place Tower
2025 First Avenue, Penthouse A
Seattle, WA  98121-3125
206•682•0565  Fax: 206•625•1052

1    has the opposite effect: it keeps the government out of religious affairs, and therefore helps

2    avoid entanglement.  *Amici* respectfully urge this Court to uphold the exemption.

3

4          Dated this 15th day of July, 2014.

5                                              Respectfully submitted,

6                                              s/Steven T. O'Ban_____
                                               Steven T. O'Ban, WSBA No. 17265
7                                              soban@elmlaw.com
                                               ELLIS, LI, & MCKINSTRY  PLLC
                                               2025 First Avenue, Penthouse A
8                                              Seattle, WA 98121-3125
                                               (206) 682-0565
9                                              Fax:  (206) 625-1052

10                                             Gregory S. Baylor
                                               TX Bar No. 01941500*
11                                             gbaylor@alliancedefendingfreedom.org
                                               ALLIANCE DEFENDING FREEDOM
12                                             801 G Street NW, Suite 509
                                               Washington, DC 20001
13                                             (202) 393-8690
                                               Fax: (202) 237-3622

14                                             Heather Gebelin Hacker
15                                             CA Bar No. 249273, AZ Bar No. 024167*
                                               hghacker@alliancedefendingfreedom.org
16                                             ALLIANCE DEFENDING FREEDOM
                                               101 Parkshore Drive, Suite 100
17                                             Folsom, CA 95630
                                               (916) 932-2850
18                                             Fax: (916) 932-2851

19                                             *Motions  for  admission  *Pro  Hac  Vice*
                                                 pending

20

21

22

23

[PROPOSED] BRIEF OF *AMICI*                    ELLIS, LI & MCKINSTRY PLLC
*CURIAE* RELIGIOUS NON-PROFIT                        Attorneys at Law
ORGANIZATIONS  - 19
                                                   Market Place Tower
                                               2025 First Avenue, Penthouse A
                                                 Seattle, WA  98121-3125
                                             206•682•0565  Fax: 206•625•1052

1

## CERTIFICATE OF SERVICE

2

3
    I hereby certify that on the 15th day of July, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

4

5
Frederick Henry Gautschi, III                Justin E. Dolan
George Theodore Hunter                        Davis Wright Tremaine

6
Gautschi Law Firm                             777 108th Avenue NE
2200 Sixth Avenue, Suite 1250                 Suite 2300, Symetra

7
Seattle, WA 98121                             Bellevue, WA 98004-5149
Telephone:  206-441-1980                      Telephone: 425-646-6113

8
Fax:  206-441-1981                            Email:  justindolan@dwt.com
Email: rgautschi@gautschilaw.com

9
                                              Katharine M. Tylee
George Theodore Hunter                        Davis Wright Tremaine

10
2200 Sixth Avenue, Suite 1250                 777 108th Avenue NE
Seattle, WA 98121                             Suite 2300, Symetra
Telephone:  206-441-1980                      Bellevue, WA 98004-5149

11
Fax:  206-441-1981                            Telephone: 425-646-6122
Email:  gthunter7700@gmail.com                Email:  katetylee@dwt.com

12

13
Larry James King                             Kathryn S. Rosen
King Law Group LLC                           Davis Wright Tremaine
417 Olympic way SW                           1201 Third Avenue, Suite 2200

14
Olympia, WA 98502                            Seattle, WA 98101-3045
Telephone:  360-352-1591                     Telephone:  206-622-3150

15
Email:  lkinglaw@msn.com                     Email:  katierosen@dwt.com

16
                                             Paula L. Lehmann
                                             Davis Wright Tremaine

17
                                             1201 Third Avenue, Suite 2200
                                             Seattle, WA 98101-3045

18
                                             Telephone:  206-622-3150
                                             Email:  paulalehmann@dwt.com

19

20

21

22

23

[PROPOSED] BRIEF OF *AMICI CURIAE* RELIGIOUS NON-PROFIT ORGANIZATIONS  - 20

ELLIS, LI & McKINSTRY PLLC
Attorneys at Law

Market Place Tower
2025 First Avenue, Penthouse A
Seattle, WA  98121-3125
206•682•0565  Fax: 206•625•1052

1

By:  s/ Steven T. O'Ban
Steven T. O'Ban, WSBA 17265
soban@elmlaw.com
ELLIS, LI, & MCKINSTRY  PLLC
2025 First Avenue, Penthouse A
Seattle, WA 98121-3125
(206) 682-0565
Fax:  (206) 625-1052

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

[PROPOSED] BRIEF OF *AMICI CURIAE* RELIGIOUS NON-PROFIT ORGANIZATIONS  - 21

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law

Market Place Tower
2025 First Avenue, Penthouse A
Seattle, WA  98121-3125
206•682•0565  Fax: 206•625•1052